## WILLIAM MATSON vs. C. Y. AIONA.

EXCEPTIONS FROM THIRD JUDICIAL CIRCUIT.

JULY TERM, 1887.

JUDD, C.J., McCULLY, PRESTON and BICKERTON, JJ.  FORNAN-
DER, J., absent.

The parties entered into the following contract:

"San Francisco, November 10th, 1886.
"I hereby agree to take from this port for Hilo, for the term of one
"year from date, on each and every trip of the vessel on which I
"am Captain, forty (40) hogs for you, the price to be nine (9)
"cents per pound on foot, delivered at Hilo, net cash.

W. MATSON.
Accepted.   C. Y. AIONA."

On the 16th February, 1887, the "Selina," with the plaintiff as
Captain, arrived in Hilo Bay, where she was wrecked.  Her load
of hogs (110 in number) was transferred to a lighter and safely
landed.  Forty hogs were tendered to the defendant, who refused
to accept them, alleging that there were too many sows, and that
it was agreed at the time the contract was made that sows were
not to be brought, and that the weights were to be from 150 to
200 lbs.

Held, affirming the judgment of the Court below:

That the word "hog" means swine of either sex, and there being no
ambiguity in the contract, parol testimony could not be admitted
to enlarge it.

This case was heard by the Chief Justice and Circuit Judge
Lyman, at the last May Term of Circuit Court of the Third
Judicial Circuit, the jury being waived.

The following is the decision of the Court, which contains a
statement of the case and the facts found:

"This is an action to recover the contract price of certain
hogs.  In the latter part of 1886, the plaintiff, in pursuance of
certain conversations had between him and the defendant, sent

from San Francisco to his agent, W. E. Scott, a contract in writing, which he had signed, to be executed by the defendant. The contract is as follows:

'San Francisco, Nov. 10th, 1886.

'I hereby agree to take from this port to Hilo, for the term of one year from date, on each and every trip of the vessel on which I am captain, forty (40) hogs for you, the price to be nine (9) cents per pound on foot delivered at Hilo, net cash.

|  | '(Sig.) | WM. MATSON. |
| 'Accepted. | '(Sig.) | C. Y. AIONA.' |

"Mr. Scott took it to the defendant, to whom he read and explained it, and defendant accordingly signed it. The plaintiff came along in his vessel (the Selina) a few weeks later, and delivered the defendant fifty hogs at 8½ cents a pound, which defendant paid for. The defendant claims that as this was a deviation from the contract price of nine cents, it must be construed as a rescission of the contract. A rescission must be mutual. Captain Matson says he distinctly told defendant that though he abated one-half a cent a pound on this lot, as he had bought them cheap in San Francisco, and had sailed before he had learned that Aiona had signed the contract, it was not to be considered as annulling the contract. On the 16th of February the Selina, with Matson as captain, came along again, and was wrecked on the coast in the bay of Hilo. Her load of hogs (some 110 in number) was transferred to a lighter by their being towed through the sea singly by a line fastened to the hind leg. They were then taken across the bay and landed safely at Waiakea dock and placed in a warehouse, where they were cared for by Mr. C. Hitchcock at Captain Matson's request. The defendant was informed by Captain Matson that his hogs had come, and he was requested to take delivery of them. On defendant expressing a fear that the swallowing of sea water would likely make the hogs sick and die, Captain Matson agreed that they should be allowed to remain there a week to await the results. A week elapsed, and none of the hogs dying, plaintiff again requested defendant to take his hogs.

On his neglecting to do so, plaintiff sold and delivered to Quong On Kee some seventy of them, and kept the remainder and again tendered them to defendant, who said there were too many sows among them, and that they averaged too much weight—that he wished hogs weighing from 130 to 150 pounds. After repeated efforts to find defendant, who left for Hamakua pending these transactions, plaintiff's attorney, Mr. D. H. Hitchcock, sold the hogs at public auction after four days' advertisement. They realized four cents a pound, and this action is brought to recover the difference between the amount thus realized and the contract price. We think that defendant has shown no sufficient reason why he should not be held to fulfillment of his contract.

" On well settled rules of law, we decline to admit parol testimony to enlarge the contract, and show that these particulars were agreed upon by the plaintiff. They are not in the written contract. It was explained to him, and he signed it with full knowledge of its contents. The contract contains no particulars as to the sex of the hogs, nor what their average weight should be. The hogs were shown in evidence to be in good order and condition, and were a merchantable article. The possibility that they were injured by taking in salt water while being hauled from the wreck to the lighter was contemplated by the parties, and the results show that they were not injured. It is contended that the majority of these swine were 'sows,' and that this contract called for 'hogs,' which do not mean or include 'sows.' We cannot agree with this contention. The word 'hog' means swine of either sex when used in describing this animal as the subject of contract of sale; and no distinction of sex is made, as the evidence shows, in buying or selling them. If sows were deemed objectionable by defendant, he could have provided for delivery of males alone in his contract. But he has not done so, and he has shown nothing to exempt him from his obligation to pay for the hogs according to the terms of the contract. The hogs weighed 8360 pounds at 9 cents, which amounts to $752.40, to which must be added $50

expense of keeping them until the sale. From this deduct $320.21 net proceeds of the auction sale, and there remains $482.19, for which judgment must be rendered for the plaintiff."

The plaintiff having put in evidence the contract between the parties, the defendant offered evidence tending to further explain the same by showing the circumstances under which the contract was entered into, and the understanding of the parties thereto as to the kind, quality and size of the hogs which should be delivered to defendant thereunder, and thus to fix an interpretation upon the contract. The Court excluded such evidence, which was duly excepted to.

### BY THE COURT.

We think there is no ambiguity in the contract, as claimed by counsel for defendant. The ruling of the Court was in accordance with the well settled principle of law. This exception is therefore overruled.

There is a further exception that the judgment of the Court upon the facts is contrary to the law and the evidence. Upon a review of the case, we find that there was ample evidence to sustain the findings.

Exceptions overruled.

*W. A. Kinney* and *D. H. Hitchcock*, for plaintiffs.
*Ashford & Ashford*, for defendant.