# Pioso, Appellant, *v.* Bitzer.

*Evidence—Parol evidence—Contradiction of written instrument—Two witnesses—Corroborative circumstances.*

Where parties without fraud or mistake have put their engagements in writing, the law declares the·writing not only the best but the only evidence of their agreement. While parol evidence is admissible to prove fraud and mistake, it is insufficient for the purpose unless clear, precise and indubitable. Testimony in contradiction of a written agreement amounts to nothing unless it is sufficient to warrant a chancellor in reforming it.

A wife executed an assignment of a policy of insurance on her husband's life. After the death of the husband, the wife denied the validity of her assignment, and an issue was framed between her as plaintiff and the assignee as defendant to determine the ownership of the policy. A notary who was present at the execution, but who was not shown to have been in any way the agent or representative of the assignee, stated that he explained to her that she was transferring her right to the assignee, and that her manner and responses indicated that she fully understood what was being done. A daughter of the plaintiff testified that she was present at the execution of the assignment, and that as her mother could not speak English, she translated to her all the notary said, and told him what her mother said in reply. Neither daughter nor mother, however, were permitted to testify as to what was said between them in German, the notary not understanding that language. *Held*, that the daughter was the only witness in contradiction of the notary's clear statement, and of the plain words of the writing, and that the mother could not be made a second witness in the manner proposed.

In the above case an offer was made to prove that some months after the execution of the assignment the notary called on the plaintiff, and in the presence of her family requested a ratification of the assignment; that when in reading the assignment he came to the name of the assignee, she became excited and angry and said : "He deceived me before ; if you had read that name to me, I would have known something was wrong, and I would not have signed the paper ; " that she left the room while the notary was reading, and that he said he was very sorry, and never would forgive himself·for what he had done. *Held*, that the offer was insufficient to establish fraud in procuring the original transfer, and that the words of the notary were not in any way corroborative of the single witness against the validity of the assignment.

Argued May 18, 1903. Reargued May 17, 1904. Appeal, No. 98, Jan. T., 1903, by plaintiff, from judgment of C. P. Lancaster Co., Nov. T., 1901, No. 4, on verdict for plaintiff in case of Sarah Pioso v. Martha A. Bitzer, Transferee of Uriah Bitzer. Before MITCHELL, C. J., DEAN, FELL, POTTER and.THOMPSON, JJ., on reargument. Affirmed.

Feigned issue to determine the ownership of a policy of life insurance. Before LANDIS, J.

At the trial plaintiff made the following offer:

The plaintiff offers to prove by Sarah Pioso, the witness on the stand, that she cannot speak or read English and understands but very little of it; that on the day she signed the paper, which Mr. Heitshu had brought to her house, her daughter Bertha called her from the kitchen to the dining room where she found Mr. Heitshu, whom she had not previously known; that Mr. Heitshu said something to her daughter Bertha in English, which she, the witness, did not understand; that her daughter immediately said to her in German that Mr. Heitshu wished her to tell the witness that he had received the papers from the insurance company and had asked whether she, the witness, wanted the interest of the money. The witness replied to her daughter in German, " I need no interest, I have the money I need. You can let it stand." Her daughter Bertha then said something to Mr. Heitshu in English, which the witness did not understand; then Mr. Heitshu said, " What your daughter said is true. You can believe that and sign the paper." Then the witness signed the paper, and that the same was never read to her.

This to be followed by proof by Bertha Pioso that on the day in question she answered the door bell and admitted Mr. Heitshu, who asked if Mrs. Pioso was in. She conducted him to the dining room and called her mother, Sarah Pioso, from the kitchen to the dining room, and that no one but her mother, Mr. Heitshu and herself were present; that Mr. Heitshu had not come with her father; that Mr. Heitshu said to her in English that he came up because he had the insurance papers in his possession and the interest was due the mother; he wanted to know whether the mother wanted the interest. The daughter then communicated this in German to her mother, who answered her in German that she was in no need of money now and preferred to let it stand with the principal. That she then translated this to Mr. Heitshu, who said if that was the case she was to sign the papers he had. That he did not read the papers to them, and that she, the witness, should tell her mother that what he had said was the truth, and that she need not fear to sign her name.

This to be followed by proof by Sarah Pioso, that Sarah Pioso executed the paper C. I. L., No. 6, under the representation, with the understanding and in full reliance upon the statement of E. R. Heitshu, that its effect would be to allow the interest or earnings of the policy to be added to or accrue with the principal; that she never knew she had transferred this policy to Uriah Bitzer until in the fall of 1898, about the time when she was asked by Mr. Heitshu and Newton Bitzer to ratify the assignment.

This testimony to be followed by proof that in November, 1898, Newton Bitzer, the son and representative of Uriah Bitzer, the transferee, with Mr. Heitshu went to Philadelphia, where Sarah Pioso was then visiting, and attempted through Mr. Heitshu to read the transfer to her; that as soon as he read the name " Bitzer " she arose, said, " You deceived me before; if you had read the name Bitzer to me I would have known something was wrong and I would not have signed the paper." That she left the room immediately, refusing to allow Mr. Heitshu to finish reading the transfer.

This to be followed by proof that Mr. Heitshu, the notary public, was not in any manner an agent for the plaintiff, Sarah Pioso.

Objected to by defendant as incompetent and irrelevant.

The Court: I do not see in this case that the defendant was ever a party to the execution. It has not been shown she was. Mrs. Bitzer was not there. There is no evidence that anybody here represented her there, or Uriah Bitzer either; it is the same thing. As I understand it Mr. Heitshu went up there with Pioso. She says he was not with Pioso. That may all be true. We will give that full force. He was not with Pioso. But there is no evidence he called there as a representative of Bitzer. I do not believe this testimony is admissible. I do not think it is. I think we will have to disallow it at this time.

Plaintiff excepts.

Bertha Pioso was asked the following question put by the plaintiff :

" Q. State whether or not you faithfully translated and communicated to your mother just what Mr. Heitshu had said, while he was still there."

Objected to by defendant.

The Court: If he did not understand it he would not know. She can answer what she then did, not what she said. We will disallow the question and give you the benefit of an exception. If Mr. Heitshu understood German and understood what she said, we will allow it if you show that.

Plaintiff excepts. Bill of exceptions signed and sealed. [3]

" Q. Will you please state what reply your mother made to the statement of Mr. Heitshu, which you had translated, and whether or not you faithfully translated that reply to Mr. Heitshu ? "

Defendant objects to the first part of that question.

The Court: That is disallowed, unless Mr. Heitshu understood what the mother said.

Plaintiff excepts. Bill of exceptions signed and sealed. [4]

" Q. Will you state whether or not you faithfully and accurately translated to Mr. Heitshu what your mother said to you in reply to Mr. Heitshu's statement ?

Objected to by defendant.

The Court: That is disallowed. She can state what she said to Mr. Heitshu. [5]

· " Q. State whether or not you communicated to your mother what Mr. Heitshu had said."

Objected to by defendant.

" Q. I am not asking the exact words, but am asking whether she communicated that to her mother."

Objected to by defendant, unless it was said in English and Mr. Heitshu understood the English. [6]

The plaintiff offers to prove by Sarah Pioso, the witness on the stand, that her daughter Bertha, in the presence of Mr. Heitshu and in his hearing, in stating the purpose for which Mr. Heitshu had come to the house, used the German word "interesse," which is used for and means in German " use money," and that she understood the word in that sense and executed the paper with the statement and a representation that thereby she would not be getting but saving the interest, or dividends, or earnings of the policy, along with the amount of the policy, and that Mr. Heitshu was not her agent in procuring the execution of the paper.

Objected to by defendant. Disallowed and plaintiff excepts. Bill of exceptions signed and sealed. [7]  .

The court gave binding instructions for defendant.
Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–19) various rulings on evidence, quoting the bill of exceptions; (20) in giving binding instructions for defendant.

*William H. Keller*, of *Coyle & Keller*, with him *Geisenberger & Rosenthal*, for appellant, cited: Com. of Mass. v. Vose, 17 L. R. A. 813; Camerlin v. Palmer Co., 92 Mass. 539; Baltimore & Ohio R. R. Co. v. Hoge, 34 Pa. 214; Wehrle's App., 189 Pa. 179; Fabrigas v. Mostyn, 20 Howard St. Tr. 81, 171; Lewis v. Eagle Insurance Co., 76 Mass. 508.

*W. U. Hensel*, for appellee, cited: Martin v. Berens, 67 Pa. 459; Rowand v. Finney, 96 Pa. 192; Ott v. Oyer, 106 Pa. 6; Phillips v. Meily, 106 Pa. 536; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Dick v. Irlenad, 130 Pa. 299; Irvin v. Irvin, 142 Pa. 271; Van Voorhis v. Rea, 153 Pa. 19; Keller v. B. & O. R. R. Co., 10 Pa. Superior Ct. 240; Harrold v. McDonald, 194 Pa. 359; White v. Black, 14 Pa. Superior Ct. 459; Sutch's Est., 201 Pa. 305; Hamory v. Sargent & Neale, 25 Pa. C. C. R. 191; Wodock v. Robinson, 148 Pa. 503.

OPINION BY MR. JUSTICE FELL, June 15, 1904:

This was a feigned issue to determine the ownership of a policy of insurance on the life of Moses Pioso, the plaintiff's husband, and the right to a fund that had been paid into court by the New York Life Insurance Company after his death. The plaintiff was the beneficiary named in the policy if she survived her husband, and the case turned on the validity of an assignment made by her nearly four years before her husband's death to one of his creditors. Both husband and wife joined in the assignment, which was "made as collateral security for the payment of indebtedness to the said Uriah Bitzer, now and hereafter to accrue to him, by reason of his indorsement of the notes of M. Pioso & Sons." Mr. Bitzer paid three annual premiums that became due after the assignment to him, and he assigned the policy to his wife, the defendant in the issue, in part payment of a debt largely in excess of the amount of the policy, for money he had borrowed from her to pay the

notes he had indorsed for Pioso & Sons. The specifications of error relate to the refusal of the court to admit certain testimony offered by the plaintiff, and the direction to the jury to find a verdict for the defendant.

The execution and acknowledgment of the writing by the plaintiff were not disputed. The notary who took the acknowledgment testified that Moses Pioso, the insured, called at his office and acknowledged the assignment, and that they went together to his home; that he there explained to the plaintiff the character of the assignment and told her that she was transferring all her right, title and interest in the policy to Mr. Bitzer; that her manner and her responses indicated that she fully understood what was being done, and that she had expected him to come. The plaintiff attempted to nullify and set the assignment aside on the ground of fraud in its procurement. Her daughter, called in her behalf, testified that the notary who took the acknowledgment called at the house alone, asked for her mother, and stated that he had brought papers sent by the insurance company, and that his purpose in calling was to know whether she wanted interest on the money; that she acted as interpreter, because her mother could not speak English and understood it very imperfectly; that she translated to her mother all the notary said and told him what her mother said in reply, which was to the effect that she had no need of the money and preferred letting the interest remain with the principal. She was allowed to testify fully as to what took place between her and the notary, what he said to her, and what she said to him in reply in translating for her mother. She was not, however, permitted to state what she had said in German to her mother and what her mother had said in German to her. Nor was the plaintiff allowed to testify to statements she had made in German to her daughter in the presence of the notary who did not understand the language spoken.

This testimony was offered to meet the requirements of the rule that two witnesses or one witness and corroborating circumstances are necessary to warrant the setting aside of a written instrument. The plaintiff's daughter was acting for her and it was not competent to show what she said to her mother in a language not understood by the notary. The plain-

tiff did not understand what the notary said, and she was no more competent to testify to it than if she had not been present. But had this testimony been admissible a second witness could not have been made or corroboration shown in this way. If it be assumed that the notary was the agent of Mr. Bitzer, and of this there is no evidence whatever, the important inquiry relates to what he said at the time. As to this there was only one witness, the plaintiff's daughter, in contradiction of the notary's clear statement and of the plain words of the writing. These offers would not, if established, have made out the plaintiff's case.

The other offers of testimony overruled were to prove that eight months after the assignment of the policy the notary at the instance of the defendant called on the plaintiff for the purpose of obtaining a ratification or re-execution of the assignment; that when in reading the assignment he came to the name Bitzer she became excited and angry and said: "You deceived me before; if you had read the name Bitzer to me, I would have known something was wrong, and I would not have signed the paper;" that she left the room while the notary was reading, and that he said he was very sorry and never would forgive himself for what he had done. These offers were rejected on the ground that the testimony was insufficient to establish fraud in procuring the original transfer. They would have contradicted the testimony of the notary only as to his statement that he had mentioned the name of Mr. Bitzer when explaining the nature of the assignment. But if they had been contradictory of all that he said and would have overthrown his testimony completely, they would have been unavailing, b - cause the case would have stood with the writing on one sid · and the testimony of a single witness on the other.

Nor would the testimony have had appreciable weight as tending to show an admission by the notary which corroborate l the plaintiff's witness. Unless it was of value as corroboration, it was of no value at all. The circumstances connected wit· the visit of the notary were set out in the offers and ma le part of them. The visit was made after a dispute had aris^ concerning the policy. There was nothing clandestine or underhand about it. One of the plaintiff's sons, at the request of the notary, went with him, and explained the object of the

visit.   Her husband, her son, three of her daughters, and her son-in-law were in the room.   On this visit as in all of his connection with the case the notary appears to have acted with entire fairness, and his expression of regret that he had done anything in the matter was entirely consistent with his honesty of intent and purpose.   It is inconceivable that if he had deceived her, he would have gone in the most public manner and in the presence of all of her family and after a dispute had arisen asked her to reaffirm the acknowledgment.   The substance of her accusation was not that he had made any misstatement but that he had not read the assignment and that she did not know that Mr. Bitzer was to get the policy, and to this his expression of regret related.   This testimony would have been insufficient to raise a suspicion of fraud, much less to sustain it.

The rules of evidence which the court correctly applied in the case have been so repeatedly stated that it is unnecessary to do more than briefly refer to them.   Where parties without fraud or mistake have put their engagements in writing, the law declares the writing not only the best but the only evidence of their agreement.   While parol evidence is admissible to prove fraud and mistake, it is insufficient for that purpose unless clear, precise and indubitable.   Testimony in contradiction of a written agreement amounts to nothing unless it is sufficient to warrant a chancellor in reforming it.   In Phillips v. Meily, 106 Pa. 536, it was said : "It is only where a chancellor would reform the instrument that parol evidence is admissible to contradict it.   It is true, under our practice in Pennsylvania, it is accomplished under common-law forms.   But the fact remains that the defense set up is purely equitable, and the judge ought not to submit the case to the jury unless the evidence is such that he would feel himself bound as a chancellor to reform the instrument.   With our modification of the English rule, now too firmly imbedded in our system to be disturbed, and our act of assembly which makes every defendant a competent witness, the principle above stated is about all that is left to preserve the sanctity and force of an instrument of writing whether that instrument be a deed, which is the evidence of a man's title to his home, or an obligation for the payment of money."

The judgment is affirmed.