## Hagan v. Universal Service Motors Co., a Corporation.

*Parol evidence to vary writing—Collateral or subsidiary agreements.*

1. Whether an oral agreement falls within the field embraced by a written agreement is to be determined by comparing the two and deciding whether parties situated as were the parties to the contract would naturally include the one in the other; if they relate to the same subject-matter and are so interrelated that both would be executed at the same time and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. These questions must be determined by the court.

2. Where one about to lease property for the purpose of a "gymnasium and physical culture" institute, notified the president of the defendant corporation that he would not sign the lease, which required him to make extensive improvements in the building, unless the corporation would agree to furnish him with heat, hot-water and steam at reasonable cost and keep the premises free from noxious odors, gas and poisonous fumes, and the president orally agreed that the corporation should do these things, and the plaintiff thereupon executed the lease and, after entering upon the property, found that the oral agreement was being violated to such an extent that, notwithstanding the improvements he had put in, he had to abandon the property, as the written lease was a contract complete in itself, the collateral or subsidiary contract is incapable of proof, and, hence, will not sustain an action.

Affidavit of defence raising questions of law. C. P. No. 5, Phila. Co., Sept. T., 1924, No. 4538.

*B. Harris*, for plaintiff; *M. J. Speiser*, for defendant.

MARTIN, P. J., Feb. 8, 1926.—Suit was instituted by plaintiff to recover damages for the breach of a collateral oral agreement made in connection with the lease of part of a building by defendant to plaintiff.

In the statement of claim it is alleged that before the lease was signed plaintiff held a conversation with the president of the defendant company in relation to renting from the defendant the fourth floor of the property, 1825 to 1833 Market Street, in the City of Philadelphia. It is alleged that this portion of the building was in an untenantable condition, without heat, water, light or sewer connection, the floors rotten and in a dangerous condition; that plaintiff stated to the president that he would not rent the premises unless defendant undertook to furnish him with a plentiful supply of heat, hot water and steam at a reasonable cost, and to keep the premises free from noxious odors, gases and poisonous fumes, and on no other condition would plaintiff agree to sign a lease and expend money on alterations, repairs and equipment requisite to put the premises in a condition to enable him to carry on his

business. It is averred that the president orally agreed to furnish hot water and steam for the business of plaintiff daily, from 9 A. M. to 9 P. M., and heat in season during the continuance of the term of the lease, at cost to the plaintiff of $2 per day, and further undertook to keep the premises clear of noxious or pernicious gas, odors and fumes, in consideration whereof plaintiff agreed to sign a lease of the premises and make, at his own cost, alterations, additions and repairs necessary to put the premises in a tenantable condition and furnish the equipment necessary for the conduct of his business, and that, relying upon this inducement and these representations, he executed a lease for a term of four years and three months. A copy of the lease is attached to the statement of claim.

The statement further alleges that, relying upon the good faith of defendant and the oral undertaking to furnish heat, hot water and steam and to keep the premises free from noxious and poisonous gases, plaintiff entered upon the premises and reconstructed the floor, erected and opened windows, installed cold-water pipes, connected the water system with the heating plant, installed toilets, wash-stands and showers and connected them with a sewer, installed a generator and electric system, erected a stairway, installed lights and constructed and equipped the leased premises for his business, as a gymnasium, and painted and decorated the interior; that soon after the premises were opened for the business of a gymnasium and physical culture institute, defendant permitted noxious and poisonous gases, exhaust fumes from automobiles stored on the third floor of the premises, which were occupied by defendant, to escape and enter the premises leased to plaintiff, making the place unfit for his business; and that, in violation of the oral agreement, defendant failed to provide hot water, steam and heat in season, in accordance with the undertakings with the president, and notified plaintiff that it would not further provide hot water, steam and heat, whereupon plaintiff notified defendant that, in view of the breach of the agreement which was the inducement for the entering of the lease, he would treat the lease as rescinded by defendant and hold defendant liable in damages.

Plaintiff alleges that he has suffered damages to the extent of $11,000 by reason of expenditures made upon the property, and $20,000, caused by the loss of the patronage of clients who subscribed for the privilege of using the facilities offered by him.

It appears that the lease, a copy of which is attached to the statement of claim, is a full and complete printed form, with the blank spaces filled in, and that four additional provisions are added in typewriting relating to rebates on the rent charged in the body of the lease, an agreement to keep the roof of the building in repair, providing for the right to terminate the lease in the event of a sale of the property, and an agreement by plaintiff to pay additional rent in the event of an increase in taxes assessed upon the property.

An affidavit of defence raising questions of law was filed, in which, among other objections to the statement of claim, it is averred that the statement fails to set forth that the alleged promises of the president were omitted from the lease by fraud, accident or mistake, and that there is no averment that the president, with whom the oral agreements were alleged to have been made, was authorized to bind defendant.

There is no averment in the statement of claim showing authority of the president to make the agreements he is alleged to have entered into with plaintiff; nor is there any allegation that the defendant company knew of the conversations between the plaintiff and the president, or that defendant had notice of the agreements, or that the president had expressed or implied

authority to act in the premises. The date of the conversation is not stated; nor does it appear how long prior to signing the lease the conversations occurred.

These objections are less important than the effort to vary the terms of the lease by adding to it the terms of the alleged oral agreements made with the president, as an amendment might be made to the statement, alleging that the action of the president was authorized, or had been ratified, or that the defendant enjoyed the benefits derived from leasing the property to plaintiff, with knowldge that the lease had been obtained by means of inducements made to plaintiff by the president. Gianni *v.* Russell & Co., Inc., 281 Pa. 320, appears to settle the law in relation to the admission of evidence of the oral agreements of the character alleged to have been made in the instant case. In the Gianni case plaintiff was tenant of a room in which he conducted a store for the sale of fruit, candy and soft drinks. The lease contained a provision that the lessee should use the premises only for sale of fruit, candy, soda-water, etc., but prohibited the sale of tobacco. Subsequently another tenant leased a different part of the building and sold soda-water.

It was claimed by the first tenant that, in the course of dealings with defendant's agent prior to signing the lease, it was agreed that, in consideration of a promise not to sell tobacco and to pay an increased rent, and in consideration of entering into the lease, it was orally agreed that he should have the exclusive right to sell soft drinks in the building. There was no such stipulation in his written lease. The first lessee claimed that there had been a violation of his contract by the landlord executing a lease to the second tenant containing a provision authorizing him to sell soft drinks, which greatly reduced the profit of the first lessee, and an action was instituted to recover damages for the breach of the oral contract. In the lower court, the first lessee recovered a verdict. In reversing the judgment, it was said in the opinion: "Appellee's counsel argues this is not a case in which an endeavor is being made to reform a written instrument because of something omitted as a result of fraud, accident or mistake, but is one involving the breach of an independent oral agreement which does not belong in the writing at all and is not germane to its provisions. We are unable to reach this conclusion. . . . Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement: Martin *v.* Berens, 67 Pa. 459-463; Irvin *v.* Irvin, 142 Pa. 271, 287. 'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence:' Union Storage Co. *v.* Speck, 194 Pa. 126, 135; Vito *v.* Birkel, 209 Pa. 206, 208. The writing must be the entire contract between the parties if parol evidence is to be excluded, and to determine whether it is or not, the writing will be looked at, and if it appears to be a contract complete within itself, 'couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking were reduced to writing:' Seitz *v.* Brewers' Refrigerating Machine Co., 141 U. S. 510-517. When does the oral agreement come within the field embraced by the written one? This can be answered by comparing the two and determining whether parties, situated as were the ones to the contract, would

Hagan *v.* Universal Service Motors Co., a Corporation.

naturally and normally include the one in the other if it were made. If they relate to the same subject-matter and are so interrelated that both would be executed at the same time and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court. In the case at bar, the written contract stipulated for the very sort of thing which plaintiff claims has no place in it. It covers the use to which the store-room was to be put by plaintiff and what he was and what he was not to sell therein; he was 'to use the premises only for the sale of fruit, candy, soda-water, etc.,' and was not 'allowed to sell tobacco in any form.' Plaintiff claims his agreement not to sell tobacco was part of the consideration for the exclusive right to sell soft drinks. Since his promise to refrain was included in the writing, it would be the natural thing to have included the promise of exclusive rights. Nothing can be imagined more pertinent to these provisions, which were included, than the one appellee avers. In cases of this kind, where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. 'In deciding upon this intent (as to whether a certain subject was intended to be embodied by the writing), the chief and most satisfactory index . . . is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered or dealt with in the writing, then, presumably, the writing was meant to represent all of the transaction on that element; if it is not, then, probably, the writing was not intended to embody that element of the negotiation:' 5 Wigmore on Evidence (2nd ed.), 309. As the written lease is the complete contract of the parties, and since it embraces the field of the alleged oral contract, evidence of the latter is inadmissible under the parol evidence rule. 'The (parol evidence) rule also denies validity to a subsidiary agreement within (the) scope (of the written contract), if sued on as a separate contract, although, except for (that rule), the agreement fulfills all the requisites of valid contract:' 2 Williston, Contracts, 1222; Penn Iron Co. *v.* Diller, 1 Sadler, 82; Krueger *v.* Nicola, 205 Pa. 38; Wodock *v.* Robinson, 148 Pa. 503. There are, of course, certain exceptions to the parol evidence rule, but this case does not fall within any of them. Plaintiff expressly rejects any idea of fraud, accident or mistake, and they are the foundation upon which any basis for admitting parol evidence to set up an entirely separate agreement within the scope of a written contract must be built. The evidence must be such as would cause a chancellor to reform the instrument, and that would be done only for these reasons (Pioso *v.* Bitzer, 209 Pa. 503), and this holds true where this essentially equitable relief is being given, in our Pennsylvania fashion, through common-law forms. We have stated on several occasions recently that we propose to stand for the integrity of written contracts: Wolverine Glass Co. *v.* Miller, 279 Pa. 138, 146; Evans *v.* Edelstein, 276 Pa. 516; Neville *v.* Kretzschmar, 271 Pa. 222. We reiterate our position in this regard."

In the instant case the terms of the lease are full and complete; the use of the leased property is designated "for the purpose of gymnasium and physical culture." The subject of the oral agreements was the leasing of the premises, and the written lease contains a clause providing that the alterations made by the lessee may become the property of the lessor. The written lease "appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent

of the agreement; it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking were reduced to writing."

And now, to wit, Feb. 8, 1926, the affidavit of defence raising questions of law is sustained and judgment is entered for defendant, and an exception noted for plaintiff.