PANG SEE & COMPANY, LIMITED, *v.* ALOHA MOTORS, LIMITED.

No. 2211.

SUBMITTED APRIL 18, 1936.            DECIDED JUNE 30, 1936.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE BROOKS IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY BANKS, J.

This is an action for damages arising out of an alleged breach of contract. The defendant demurred to the complaint on several grounds, including the following: "That said second amended complaint fails to set forth facts sufficient to constitute a cause of action; * * * that said second amended complaint fails to set forth facts sufficient to constitute a cause of action for the reasons: * * * (c) That it affirmatively appears that the alleged subsequent written contract of August 9, 1933, a copy of which is attached to the second amended complaint as Exhibit 'A', merged the prior parol contract of the same day; * * * (e) That the allegations of the second amended complaint conclusively show that the parties reduced the result of their negotiations to writing and that the conditional sale contract and the letter of defendant

to plaintiff, copies of which are attached to the second amended bill of complaint as Exhibits 'A' and 'B', cover the same subject matter as the prior alleged parol contract, and were accepted by plaintiff." The court sustained the demurrer on these grounds and the case is here on plaintiff's exception.

It appears from the complaint that on the 9th day of August, 1933, the parties signed a conditional sales contract, the subject of which was a Chevrolet automobile. A copy of this contract is attached to the complaint as Exhibit "A" and made a part thereof. The price of the automobile was $964, payable $250 on or before delivery and the balance of $714 at the office designated by seller, in fifteen installments of $45 each, followed by the sixteenth installment which was to be $39.

It is provided in the contract that "title to said property shall not pass to the purchaser until said amount is fully paid in cash." There are other provisions which are immaterial to the present inquiry and therefore need not be referred to.

The complaint is quite voluminous and it would serve no useful purpose to quote it in full. The following summary of portions of it will suffice to disclose the question of law presented by the demurrer.

The defendant was the sales agent of Chevrolet automobiles and the plaintiff was the sales agent of radio sets known as the Philco radio. Shortly prior to the execution of the contract above referred to as Exhibit "A" the defendant proposed to the plaintiff that if the latter would purchase from the former a Chevrolet sedan automobile and make a cash payment of $250 such payment would be the only amount of cash the plaintiff would be required to pay on account of the purchase price, and that the balance could be liquidated in the following manner: The plaintiff would install in automobiles there-

after to be sold by the defendant, "Model 5 Transitone" Philco radio sets at the prevailing price of $45 per set, and whenever the defendant sold an automobile which contained a Philco radio set the sum of $45 would be credited by the defendant on the unpaid balance due on the automobile purchased by the plaintiff from the defendant, and that this would continue until the entire unpaid balance was finally liquidated. The defendant would also guarantee to sell at least one radio set each and every month during the term of the proposed contract and would foster and stimulate the sale of plaintiff's radios to the exclusion of all other makes of radios. If this arrangement was satisfactory to the plaintiff the defendant would enter into a contract containing these provisions.

On or about the 9th of August, 1933, the defendant presented to the plaintiff for its signature a form of agreement of sale or conditional sale contract, which the defendant's duly authorized agent informed plaintiff's representative would have to be executed by both parties as it was the customary printed form of contract used by defendant when sales of automobiles were made by it. The printed form contained no reference to the proposed specific agreement above referred to and the plaintiff refused to sign it unless the full terms of said proposed agreement should be embodied in it, whereupon defendant, through its duly authorized agent, expressly verbally agreed with plaintiff to carry out the full terms and conditions of the proposed agreement and agreed that if plaintiff would sign the printed form of contract the defendant would faithfully carry out all the terms and conditions of said proposed contract, the defendant expressly agreeing with plaintiff at said time, as a condition to plaintiff's signing the said written contract, that defendant would faithfully carry out all of the undertakings it

had specifically theretofore proposed. Whereupon, the contract as expressed in Exhibit "A" was signed, the cash payment of $250 was made and the automobile was delivered to the plaintiff.

After signing the contract the defendant caused to be signed on its behalf and delivered to plaintiff a written memorandum which defendant's duly accredited agent assured plaintiff's representative was in full accord with the verbal agreement already mentioned. The plaintiff was under the impression that the memorandum expressed the full intention and agreement of the parties as to the manner in which the unpaid balance of $714 was to be liquidated. The memorandum is as follows:

"Aloha Motors, Ltd.,
820 South Beretania Street,
Honolulu, Hawaii

"August 9, 1933.

"Pang See and Co., Ltd.
Honolulu, Hawaii
"Gentlemen:

"Confirming our conversation of even date, the writer personally will make every effort to force the sale of your Philco radio. I will see that each salesman is furnished with circulars so that they will be informed on the price, etc.

"We feel that with a little effort on our part that we will be able to sell a number of radios for you.

"Thanking you for your valued order for the Chevrolet Sedan, we are,

"Very truly yours,
"(Sgd) J. A. JACKSON

"JAJackson/ep

"P. S. All radios sold by us will be credited to your contract car account.

"(Sgd) JAJ"

The memorandum was not a full or real statement of the parol agreement on the faith of which the conditional

sale contract had been signed. The plaintiff did not discover the inadequate and improper wording of the memorandum until after the defendant had repossessed itself of the automobile, which had been delivered to the plaintiff.

The plaintiff performed all of the terms and conditions required of it under the oral agreement between the parties. The defendant, however, contrary to the terms and conditions of said oral contract and in direct breach thereof, retook and repossessed the automobile, which was the subject of the contract, and sold and delivered it to another buyer and not only failed to sell or stimulate the sale of Philco radios but advanced the sale of other radios handled by the defendant's competitors. The plaintiff prays judgment against the defendant for the sum of $250, the amount paid to the defendant when the automobile was delivered, and for the further sum of $2,000 damages arising out of the defendant's refusal to comply with the terms of the oral agreement.

Whether the complaint states a cause of action depends upon the right of the plaintiff under the law to inject into the written contract extensive agreements which are contradictory of and in addition to those appearing in the written contract and which depend for proof upon parol testimony.

It is contended by the plaintiff that the oral statements made by the defendant prior to the execution of the written contract concerning what it would agree to do regarding the matter of payment of the deferred balance of the purchase price in the event the sale was consummated and of fostering the sale of defendant's radios, and its subsequent assurance given at the time the contract was signed that the oral agreement would be lived up to, were a condition upon which the written contract

was executed and therefore the proof of the oral agreement by parol evidence is permissible.

In support of this view our attention is directed to *Ferguson* v. *Rafferty,* 128 Pa. 337, where the rule invoked by the plaintiff is thus stated (p. 356) : "Parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change, or reform the instrument."

After years of judicial debate the Pennsylvania court finally came to the conclusion that the rule as previously announced was too broad and therefore restricted it within quite narrow limits. (*Fuller* v. *Law,* 207 Pa. 101; *Gianni* v. *Russell & Co., Inc.,* 281 Pa. 320; 52 Pa. L. R. 601; 74 Pa. L. R. 235.)

In the *Fuller* case the defendant purchased $30,000 worth of stock from the plaintiff, paying therefor $25,000 in cash and giving a $5,000 note for the balance. This note was subsequently renewed and upon failure of payment suit was brought on it. The note was as follows:

"$5,000.                                        No. 40718.

"Pittston, Pa. September 18, 1899.

"January 18th after date I promise to pay to the order of E. L. Fuller five thousand dollars, at the Miners' Savings Bank of Pittston, without defalcation, for value received.

"John B. Law."

At the trial the defendant offered to prove, among other things, that the original note was accompanied by an oral promise guaranteeing that dividends derived from the stock purchased would pay for the note within six years; that if the dividends failed to pay the purchase price within the time mentioned the defendant would be relieved from the obligation; and furthermore, that at all events payment was to be made by application of the dividends and that it was this representation which induced the defendant to take the stock and give the note.

The offer of proof was rejected by the trial judge on the ground that the evidence offered was in contradiction of the writing, and there being no further evidence judgment was entered for the plaintiff. On appeal the judgment of the lower court was affirmed. The court, speaking through Mr. Justice Dean, said in part: "There is no doubt, that there is much apparent and some real conflict in the numerous cases involving the question, as to when parol testimony is admissible in contradiction of written instruments. Since the legislation, however, allowing the parties to such instruments to testify in their own behalf, we have endeavored to save whatever is left of the rule 'that parol evidence is inadmissible to vary or contradict written instruments' by somewhat more rigid rulings tending to exclude parol evidence. We concede, success in that direction has not as yet been what we hoped for. * * * As there was no fraud in the creation of the instrument, nor in not waiting until the dividends on the stock paid it, it comes under the rulings in Hill v. Gaw, 4 Pa. 493, Hacker v. National Oil Refining Co., 73 Pa. 93, and the other authorities cited by the learned judge of the court below, holding that evidence of fraud, accident or mistake can alone successfully contradict or set aside the writing."

The *Gianni* case was an action for damages by the plaintiff-lessee against the defendant-lessor for breach of an alleged oral contract. The plaintiff had been a tenant of a room which he used as a store, selling tobacco, fruit, candy and soft drinks. The defendant, after acquiring property in which the plaintiff's store was located, authorized his agent to contract with the plaintiff for the further leasing of the store room and the parties thereafter entered into a three year lease. It contained a provision that the plaintiff was to use the room only for the sale of fruit, candy, soda water, etc., without the privilege

of selling tobacco. After the lease was signed the defend-
ant rented an adjoining room to a drug company, permit-
ting the latter to sell soda water and soft drinks. The
trial court admitted evidence of a contemporaneous oral
agreement that in consideration of the plaintiff's promises
not to sell tobacco he was to have the exclusive right to
sell soft drinks in the building, and that it was his re-
liance upon this condition which induced him to execute
the lease. In reversing the trial court and rendering
judgment for the defendant the appellate court said:
"Appellee's counsel argues this is not a case in which an
endeavor is being made to reform a written instrument
because of something omitted as a result of fraud, acci-
dent or mistake, but is one involving the breach of an in-
dependent oral agreement which does not belong in the
writing at all and is not germane to its provisions. We
are unable to reach this conclusion. 'Where parties,
without any fraud or mistake, have deliberately put their
engagements in writing, the law declares the writing to
be not only the best, but the only, evidence of their agree-
ment': Martin v. Berens, 67 Pa. 459, 463; Irvin v. Irvin,
142 Pa. 271, 287. 'All preliminary negotiations, conver-
sations and verbal agreements are merged in and super-
seded by the subsequent written contract * * * and unless
fraud, accident or mistake be averred the writing consti-
tutes the agreement between the parties, and its terms
cannot be added to nor subtracted from by parol evi-
dence': Union Storage Co. v. Speck, 194 Pa. 126, 133;
Vito v. Birkel, 209 Pa. 206, 208. The writing must be the
entire contract between the parties if parol evidence is to
be excluded and to determine whether it is or not the
writing will be looked at and if it appears to be a contract
complete within itself 'couched in such terms as import a
complete legal obligation without any uncertainty as to
the object or extent of the engagement it is conclusively

presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing': Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 517. When does the oral agreement come within the field embraced by the written one? This can be answered by comparing the two, and determining whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court. In the case at bar the written contract stipulated for the very sort of thing which plaintiff claims has no place in it. It covers the use to which the storeroom was to be put by plaintiff and what he was and what he was not to sell therein; he was 'to use the premises only for the sale of fruit, candy, soda water, etc.,' and was not 'allowed to sell tobacco in any form.' Plaintiff claims his agreement not to sell tobacco was part of the consideration for the exclusive right to sell soft drinks. Since his promise to refrain was included in the writing it would be the natural thing to have included the promise of exclusive rights. Nothing can be imagined more pertinent to these provisions which were included than the one appellee avers. In cases of this kind, where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract, it is presumed that the writing was intended to set forth the entire agreement as to that particular subject. 'In deciding upon this intent [as to whether a certain subject was intended to be embodied by the writing], the chief and most satisfactory index * * * is found in the circumstances whether or not the *particular element of*

*the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation': Wigmore on Evidence (2d ed.) vol. 5, page 309. As the written lease is the complete contract of the parties and since it embraces the field of the alleged oral contract, evidence of the latter is inadmissible under the parol evidence rule. 'The [parol evidence] rule also denies validity to a subsidiary agreement within [the] scope [of the written contract] if sued on as a separate contract, although except for [that rule], the agreement fulfills all the requisites of valid contract': 2 Williston, Contracts 1222; Penn Iron Co. v. Diller, 1 Sadler 82; Krueger v. Nicola, 205 Pa. 38; Wodock v. Robinson, 148 Pa. 503. There are, of course, certain exceptions to the parol evidence rule but this case does not fall within any of them. Plaintiff expressly rejects any idea of fraud, accident or mistake and they are the foundation upon which any basis for admitting parol evidence to set up an entirely separate agreement within the scope of a written contract must be built. The evidence must be such as would cause a chancellor to reform the instrument and that would be done only for these reasons (Pioso v. Bitzer, 209 Pa. 503) and this holds true where this essentially equitable relief is being given, in our Pennsylvania fashion, through common law forms. We have stated on several occasions recently that we propose to stand for the integrity of written contracts: Wolverine Glass Co. v. Miller, 279 Pa. 138, 146; Evans v. Edelstein, 276 Pa. 516; Neville v. Kretzschmar, 271 Pa. 222. We reiterate our position in this regard."

In *Smith* v. *Lee Chee,* 27 Haw. 122, this court said (p. 124) : "It is elementary that where a written con-

tract purports on its face to be a complete and final settlement of the whole transaction between the parties without any uncertainty as to the object or extent of the engagement it is conclusively presumed that the whole engagement óf the parties and the extent and manner of their undertaking are contained therein and a contemporaneous oral agreement pertaining to the same subject-matter as the written contract cannot be resorted to to vary or alter the terms of the latter. 22 C. J., title 'Evidence,' Sec. 1662 et seq., p. 1245 et seq.; *Fraise* v. *Kealoha,* 1 Haw. 48; *Magnin* v. *Furgie,* 4 Haw. 467; *Matson* v. *Aiona,* 7 Haw. 158; *Davis* v. *Mills,* 21 Haw. 167; *Seitz* v. *Brewers' Refrigerating Machine Co.,* 141 U. S. 510, 517." See also *Naumberg* v. *Young,* 44 N. J. L. 331.

In the instant case every element of the transaction between the parties relating to the sale of the automobile, including the manner of payment, was expressly dealt with in the written instrument. The subject of the contract of sale is fully described; the price is definitely stated; the amount of the cash payment is stated; the balance of the purchase price is stated; the periods of payment of this balance are stated; the medium of payments necessary to vest title in the plaintiff is stated to be "in cash."

There is no averment in the complaint that the defendant violated any of the terms of the written contract. Its entire case rests upon the breach of an alleged oral agreement which, if permitted to be proved by parol evidence, would both contradict and add to the terms of the written instrument which are unambiguously expressed therein.

For the foregoing reasons the exception is overruled.

*H. W. Wong* and *W. B. Lymer* for plaintiff.

*R. J. O'Brien* for defendant.